UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**TOBIAS ELIZONDO-SEDILLO,**
    Plaintiff,

vs.	No. 1:14-cv-00127-JAP/RHS

**THE CITY OF ALBUQUERQUE,
TRANSPORT OFFICER ANDREW
DOMINGUEZ, TRANSPORT OFFICER
GABRIEL MONTOYA, TRANSPORT
OFFICER MICHAEL MCDANIEL, and
TRANSPORT OFFICER CEDRICK GALLOWAY,**
    Defendants.

## MEMORANDUM OPINION AND ORDER

On April 2, 2014, Defendants City of Albuquerque, Andrew Dominguez, Gabriel Montoya, Michael McDaniel, and Cedric Galloway (Defendants) filed a motion asking the Court to dismiss Plaintiff's claims, all of which arise out of Plaintiff's June 16, 2012 arrest and detention. *See* CITY DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT, AND MEMORANDUM IN SUPPORT (Doc. No. 24) (Motion).[1] In this Motion, the individual Defendants assert qualified immunity and argue that summary judgment is appropriate because (1) Plaintiff has not produced evidence showing that each named Defendant participated in the misconduct alleged and (2) the behavior of the unidentified officers who supposedly handcuffed Plaintiff, ignored his complaints about the tightness of the handcuffs, and refused to allow him to use the restroom does not, under the circumstances, rise to the level of excessive force under the Fourth Amendment or under New Mexico law. Additionally, Defendant City of Albuquerque contends that the claims against it must be dismissed because it is not responsible for the behavior of the officers who allegedly mistreated Plaintiff.

---

[1] Defendants style their motion as both a motion to dismiss and a motion for summary judgment. However, Defendants have attached five affidavits to their motion, which they ask the Court to consider. As a result, the Court will treat the motion as a motion for summary judgment. *See* FED. R. CIV. P. 12(d).

1

Plaintiff opposes the Motion. *See* PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT (Doc. No. 32) (Response). However, Plaintiff has failed to produce any evidence indicating that the named individual Defendants were personally involved in the alleged misconduct. To the contrary, Plaintiff candidly admits that he is not sure the named officers he has sued are the correct officers. *See* RESPONSE TO DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR STAY OF DISCOVERY AND REQUEST FOR ENTRY OF PROTECTIVE ORDER (Doc. No. 30 at 3). For this reason, the Court will dismiss the claims against these individual Defendants with prejudice. As for the claims against the City of Albuquerque, after considering the Motion, the argument of the parties,[2] and the applicable law, the Court has decided to grant in part and deny in part Defendants' Motion as further described herein.

I. BACKGROUND

   A. Factual History

Plaintiff has produced evidence to support the following facts. On June 16, 2012, at approximately 2:16 a.m., Albuquerque Police Officer Matthew Reeder arrested Plaintiff Tobias Elizondo-Sedillo for disorderly conduct. Affidavit of Matthew Reeder, Exhibit A to Motion (Doc. No. 24-1 ¶¶ 2, 12). Subsequent to the arrest, Officer Reeder escorted Plaintiff to a nearby prisoner transport van, which was manned by Prisoner Transport Officers Andrew Dominguez

---

[2] In addition to those briefs already cited, the Court also considered CITY DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (Doc. No. 36) (Reply); PLAINTIFF'S NOTICE OF SUPPLEMENTATION OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (Doc. No. 38); PLAINTIFF'S SUPPLEMENTATION OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (Doc. No. 43); and DEFENDANTS' REPLY TO PLAINTIFF'S SUPPLEMENTATION OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 44).

and Gabriel Montoya. *Id.* ¶ 15; Affidavit of Andrew Dominguez, Exhibit B to Motion (Doc. No. 24-5 ¶¶ 2-4); Affidavit of Gabriel Montoya, Exhibit C to Motion (Doc. No. 24-6 ¶¶ 2-4). Officers Dominguez and Montoya handcuffed Plaintiff, placed him in the van, and eventually transported him to the Prisoner Transport Center (PTC), where Plaintiff remained until roughly 5:20 a.m. Dominguez Aff. ¶¶ 5, 8, 9, 13.

According to Plaintiff's affidavit, sometime after he arrived at PTC, he was brought to the processing desk, un-handcuffed, asked to remove his rings, and then re-handcuffed and put into a holding cell. Affidavit of Tobias Elizondo-Sedillo, Exhibit B to Response (Doc. No. 32-2 ¶¶ 1-3). Plaintiff avers that the officer who handcuffed him at the processing desk neglected to double-lock the handcuffs. *Id.* ¶ 2. As a result, when Plaintiff sat down in the holding cell, the handcuffs became tighter. *Id.* ¶ 4. In response, Plaintiff "yelled out asking to have the cuffs loosened." *Id.* ¶ 5. No one responded. *Id.* Undeterred, Plaintiff continued to complain about the handcuffs causing pain in his wrists. *Id.* ¶¶ 6, 9. During this time period, Plaintiff also repeatedly requested to use the restroom. *Id.* ¶¶ 2, 4, 6, 8, 9. Both requests were ignored. Instead, the officers who spoke with Plaintiff told him to wait, be quiet, and settle down. *Id.* ¶¶ 2, 4, 6, 7-8, 10. After "a while" of listening to Plaintiff complain, unnamed officers placed Plaintiff in shackles and a padded head guard. *Id.* ¶ 10. Shortly thereafter, Plaintiff defecated in his clothes. *Id.* ¶ 11.

Then, around 5:20 a.m., Prisoner Transport Officers Michael McDaniel and Cedric Galloway drove Plaintiff to the Metropolitan Detention Center (MDC). Affidavit of Michael McDaniel, Exhibit E to Motion (Doc. No. 24-8 ¶ 3). In his affidavit, Plaintiff testifies that the officers who escorted him from the PTC holding cell to the MDC transport van, officers who may or may not be Officers McDaniel and Galloway, also ignored his complaints about his

3

handcuffs and then grabbed him by the handcuffs to lift him into the van, causing him excruciating pain. Elizondo-Sedillo Aff. ¶¶ 12-15. Plaintiff attached a medical record to his Response indicating that he later sought medical treatment for wrist pain and was referred to an outpatient occupational therapist due to "right ulnar nerve neuropathy secondary to trauma" and pain, twitching, and numbness in some of his fingers. Consult Requests, Exhibit C to Response (Doc. No. 32-3).[3] Based on this experience, Plaintiff brings claims for assault, battery, excessive force, and denial of due process.

### B. Procedural History

On April 2, 2014, the day Defendants filed the motion for summary judgment, Defendant also filed a motion to stay the proceedings pending disposition of the qualified immunity issue. *See* DEFENDANTS' MOTION, AND MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR STAY OF DISCOVERY AND REQUEST FOR ENTRY OF A PROTECTIVE ORDER (Doc. No. 26). Plaintiff's response to this motion was peripatetic. Plaintiff stated that additional discovery "should be allowed to determine the correct officers involved." RESPONSE TO DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR STAY OF DISCOVERY AND REQUEST FOR ENTRY OF PROTECTIVE ORDER (Doc. No. 30 at 3). Yet, Plaintiff "agree[d] the Court should first decide the qualified immunity issue and if Plaintiff prevails, the Court should then allow discovery to continue, allowing the Plaintiff to add additional officers if they are discovered to have been involved." *Id.* In other words, Plaintiff did not oppose the Motion to Stay. To resolve this ambiguity, the Court held a hearing on May 13, 2014 at which James Ellis, Charles Bennett, and Mark Swanson

---

[3] "Unauthenticated documents, once challenged, cannot be considered by a court in determining a summary judgment motion." *Bell v. City of Topeka*, 496 F. Supp. 2d 1182, 1184 (D. Kan. 2007). However, Defendants have specifically stated that they do not dispute the authenticity of Exhibit C. Reply at 6. Therefore, the Court will consider Exhibit C in making its ruling.

represented Plaintiff. Stephanie Griffin represented Defendants. At this hearing, the parties agreed to depose Sergeant Jonathan Jaramillo, the sergeant on duty at PTC the night Plaintiff was detained. With the exception of this limited deposition, the parties agreed that the Court should stay the proceedings, which it did. *See* ORDER (Doc. No. 41).

On June 23, 2014, with the permission of the Court, Plaintiff filed a supplemental brief attaching portions of Sergeant Jaramillo's deposition. *See* PLAINTIFF'S SUPPLEMENTATION OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (Doc. No. 43) (Supplement). According to his deposition testimony, Sergeant Jaramillo has no personal knowledge about which on-duty officer re-handcuffed Plaintiff at PTC. Deposition of Jonathan Jaramillo, Exhibit 1 to Supplement (Doc. No. 43-1 at 70:3-14, 85:13-25). Similarly, in the sections of the deposition provided to the Court, Sergeant Jaramillo gives no indication that he has any personal knowledge regarding which on-duty officer or officers ignored Plaintiff's complaints about the tight handcuffs and Plaintiff's requests to use the restroom. *Id.*

Thus, the facts concerning the personal involvement of the named individual Defendants remain shrouded. Despite this state of affairs, Plaintiff has not made a formal request for additional discovery under Fed. R. Civ. P. 56(d). Instead, Plaintiff takes the position that "there is no way to determine who actually placed the handcuffs on [Plaintiff]." Supplement at 6. Plaintiff appears to be under the misapprehension that the Court can resolve the qualified immunity issue in Plaintiff's favor without determining exactly what role each individual Defendant played in causing Plaintiff's injuries. This is incorrect. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). Although the Court believes Plaintiff's decision

to refrain from seeking further discovery was unwise, the Court is nonetheless constrained by this decision and must rule on Defendant's Motion based on the record provided.

## II.  STANDARD OF REVIEW

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted).  Once the movant meets this burden, Rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In considering a motion for summary judgment, then, the Court's "role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002).

When an individual defendant asserts qualified immunity, the procedure for analyzing this defendant's motion for summary judgment is slightly different. Qualified immunity protects government officials who are required to exercise their discretion by shielding them from liability for harm caused by reasonable mistakes. *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009). Therefore, any time a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff to show that: (1) the defendant

violated a constitutional right, and (2) the constitutional right was clearly established at the time of defendant's conduct. *Courtney v. Okla. ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013). Only if the "plaintiff successfully carries his two-part burden," upon a consideration of the facts in the light most favorable to the plaintiff, does the "defendant bear[] the burden, as an ordinary movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity." *Walton v. Gomez*, 745 F.3d 405, 412 (10th Cir. 2014).

### III. DISCUSSION

#### A. Claims Against Individual Defendants

Because "§ 1983 imposes liability for a defendant's own actions[,] personal participation in the specific constitutional violation complained of is essential." *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011). Plaintiff cannot prevail on a claim against the named individual Defendants unless he can produce evidence linking each Defendant with the alleged constitutional violation that occurred in this case: improper handcuffing and disregard of Plaintiff's requests to loosen the handcuffs and be allowed to use the restroom. Because there is absolutely no evidence in the record showing that any of the named individual Defendants personally participated in this conduct, the Court will grant these Defendants' motion for summary judgment on Plaintiff's § 1983 claims.

The paucity of evidence connecting the individual Defendants with the conduct of the unknown officers who injured Plaintiff also requires the Court to dismiss Plaintiff's claims for assault and battery, which were asserted under the New Mexico Tort Claims Act. Both assault and battery are intentional torts, which require proof that the defendant actually committed the complained of behavior. *See Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1208-1209

7

(10th Cir. 2006) (listing the elements of a claim for assault or battery in New Mexico). Here, this evidence is lacking.

### B. Claims Against the City of Albuquerque

#### 1. § 1983 Excessive Force Claims[4]

"A plaintiff suing a municipality under Section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 667 (10th Cir. 2010) (quoting *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998)). More recent case law imposes an additional requirement, "a plaintiff [must also] show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

#### i. Fourteenth Amendment Excessive Force Claim

Depending on the circumstances, an excessive force claim may be asserted under the Fourth, Fifth, Eighth, or Fourteenth Amendments. *Gomez*, 745 F.3d at 418-19. While the Fourteenth Amendment generally applies to claims asserted by pretrial detainees, "the Fourth

---

[4] Defendants interpret Plaintiff's Response as abandoning the § 1983 claims clearly asserted against the City of Albuquerque in Plaintiff's complaint. Rely at 11. This is not the Court's understanding of Plaintiff's position. In responding to Defendants' Fact No. 1, Plaintiff lists all of his claims, including claims for "excessive force," "denial of due process," and "respondeat superior." Response at 2. Plaintiff does not in any way intimate that he is not asserting § 1983 claims against the City of Albuquerque. To the contrary, Plaintiff cites various paragraphs of the complaint, including a paragraph that alleges the City of Albuquerque "maintain[s] an unconstitutional policy, practice or custom of discouraging employees from intervening when a fellow office or a subordinate engages in the excessive use of force." *See* FIRST AMENDED COMPLAINT FOR MONEY DAMAGES FOR PERSONAL INJURY AND FOR PUNITIVE DAMAGES (Doc. No. 20 ¶ 28). Consistent with this position, Plaintiff disputes Defendants' assertion that it is the policy of the Albuquerque Police Department for officers to only use that force which is reasonably necessary. Response at 4. Given these sections of the Response, the Court construes Plaintiff's Response as asserting claims against the City under § 1983. Thus, the Court must consider whether these claims are viable.

Amendment, not the Fourteenth, governs excessive force claims arising from treatment of an arrestee [such as Plaintiff] detained without a warrant and prior to any probable cause hearing." *Id.* at 419 (internal citations omitted). Because Plaintiff's claim is properly subject to the standards of the Fourth Amendment, the Court will dismiss Plaintiff's Fourteenth Amendment excessive force claim with prejudice.

### ii. Fourth Amendment Excessive Force Claim

Now that the Court has "isolate[d] the precise constitutional violation with which [Defendants are properly] charged," *id.*, the question is whether Plaintiff has produced evidence of a Fourth Amendment violation for which the City is responsible sufficient to withstand summary judgment. Defendants contend that Plaintiff's municipal liability claim is deficient because (1) the conduct of the "John Doe" officers who interacted with Plaintiff at PTC did not constitute excessive force and (2) even if there was an underlying violation of Plaintiff's constitutional rights there is no evidence that the City was the "moving force" behind this violation. Viewing the evidence presented in the light most favorable to Plaintiff, the Court disagrees.

### a. Whether the Alleged Conduct Constituted Excessive Force

The consideration of every Fourth Amendment excessive force claim must start with the recognition that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat." *Graham v. Connor*, 490 U.S. 386, 396 (1989). While the Fourth Amendment imposes limits on this right, these limits are objective. The force employed during an arrest and detention is excessive only if it is greater than reasonably necessary "from the perspective of a reasonable officer on the scene." *Id*. at 396-97; *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007). Three non-exclusive factors guide the

reasonableness analysis: the severity of the crime, the level of threat posed by the suspect to officer and public safety, and the amount of resistance to or compliance with the arrest exhibited by the suspect. *Graham*, 490 U.S. at 396. In evaluating these factors, the Court must always keep in mind "that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Id.* at 397.

In addition to the above standards, the Tenth Circuit Court of Appeals has promulgated special rules for tight handcuffing cases. Because post-arrest handcuffing is routinely authorized, when a plaintiff asserts an excessive force claim based on the form or manner of handcuffing the plaintiff cannot recover without showing "some actual injury caused by the unreasonable seizure that is not de minimis." *Cortez*, 478 F.3d at 1127 n. 25. This injury may be physical or emotional. *Id.* "[P]roof of physical injury manifested by visible cuts, bruises, abrasions or scars" is not required. *Fisher v. City of Las Cruces*, 584 F.3d 888, 897 (10th Cir. 2009).

Here, Plaintiff asserts an excessive force claim against the City of Albuquerque based on the unidentified officers' refusal to allow Plaintiff access to the restroom and based on injuries caused by being left in too-tight handcuffs for a period of hours. Both claims are viable as a reasonable jury could, drawing all inferences in favor of Plaintiff, conclude that the conduct of the PTC officers was unjustified and unreasonable under the circumstances. Notably, Defendants do not make any attempt to explain or justify the alleged decision to refuse Plaintiff access to a restroom despite multiple requests. Rather, Defendants take the untenable position that an alleged denial of access to a restroom is never excessive force under the Fourth Amendment. The three cases cited by Defendants do not support such an argument. The first case cited by Defendants, *Mateo v. Alexander*, No. 10-cv-8427, 2012 WL 864805, at *5 (S.D.N.Y. Mar. 14,

2012) (unpublished), involves an Eighth Amendment not a Fourth Amendment claim. The other two cases both concern Fourth Amendment excessive force claims brought by individuals detained without access to a restroom during the search of a private residence. They are easily distinguishable. When the police execute a search warrant, there are obvious safety and investigative reasons for restraining the occupants of the home. For example, in *Hunter v. Namanny*, 219 F.3d 825 (8th Cir. 2000), the Eighth Circuit Court of Appeals reasoned that the United States Constitution does not require "police engaged in a search for drugs [to] allow a resident of the subject property access to a ready means of disposal of such contraband." *Id.* at 831.

To the contrary, there is no obvious necessity for refusing an individual access to a restroom over an extended period of time when that individual is detained at a secure facility staffed by police officers. Just as "deprivation of bathroom breaks" can violate the Eighth Amendment's prohibition on cruel and unusual punishment, refusing to allow an arrestee access to the bathroom for no good reason may "*a fortiori* violate the Fourth Amendment, which requires a showing of objective unreasonableness rather than any particular subjective motivation." *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002). In reaching the conclusion that a reasonable jury could rule in Plaintiff's favor on his claim that he was denied access to the bathroom in violation of the Fourth Amendment, the Court considers it significant that Plaintiff's requests to use the restroom were repeatedly denied, over a significant period of time, for no apparent reason, except perhaps irritation at Plaintiff's numerous requests. This is not a case where officers were making "split-second judgments" in a "tense, uncertain, and rapidly evolving" environment. *See Graham*, 490 U.S. at 397. To the contrary, Plaintiff's affidavit

indicates that PTC officers callously and purposefully disregarded Plaintiff's pleas to use the restroom.

Other courts have found constitutional violations in similar situations. In *Carroll v. Village of Homewood*, No. 97 C 2747, 2001 WL 1467708 (N.D. Ill. Nov. 15, 2001), the plaintiff brought a Fourth Amendment excessive force claim against police officers who allegedly refused to allow the plaintiff to use the restroom. *Id* at *10. The plaintiff produced evidence that the officers ignored his requests to use the restroom for roughly one hour, eventually causing the plaintiff to urinate in his pants. *Id* at *2. In light of this evidence, the Court denied the officer's motion for qualified immunity and ruled that ignoring an arrestee's request to use the restroom can violate the Fourth Amendment's prohibition on excessive force. *Id* at *11; *see also Taylor v. Liss*, No. 05-71728 , 2006 WL 1851096, at *26, 29 (E.D. Mich. July 5, 2006) (like other prisoners, arrestees have a constitutional right to be free from excessive force; a reasonable jury could conclude this right has been violated when an arrestee is detained in a small cell without access to a restroom for six or seven hours).

Without citing any supporting authority, Defendants contend that the Court must dismiss Plaintiff's claim, even if denying Plaintiff access to the restroom rose to the level of excessive force, because Plaintiff did not suffer any injury as a result of this denial. Basically, Defendants claim that defecating in one's pants is not an actual injury cognizable under the Fourth Amendment. This argument is specious. "[T]he interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property, and privacy interests--a person's sense of security and individual dignity." *Fisher*, 584 F.3d at 897-898 (internal citation omitted). In other words, a plaintiff may proceed with a Fourth Amendment

excessive force claim on the theory that the defendant-officers caused the plaintiff a "dignitary injury." *Id.* at 899. To hold otherwise would be to tolerate abusive police behavior as long as this behavior does not result in more than minor physical injury. This has never been the law. "[A]n excessive force claim is not dependent on physical injury or even physical contact, but on 'patently unreasonable conduct' by the arresting officer." *Grass v. Johnson*, 322 F. App'x 586, 590 (10th Cir. 2009) (unpublished) (citing *Cortez*, 478 F.3d at 1131). In this case, Plaintiff has produced evidence of a dignitary injury – defecating in his clothing – that is sufficient as a matter of law to withstand summary judgment. Any factual disputes concerning whether Plaintiff actually defecated in his pants are issues for the finder of fact, not this Court.

Like with Plaintiff's claims concerning deprivation of bathroom-access, a reasonable jury could also find that the unidentified officers who interacted with Plaintiff exercised excessive force against Plaintiff by ignoring his requests to loosen his handcuffs and by lifting him by his handcuffs. Defendants do not dispute that the events described by Plaintiff – failing to double-lock Plaintiff's handcuffs and then placing him in a holding cell and ignoring his repeated complaints about wrist pain – are an unreasonable use of force.[5] Rather, Defendants maintain that summary judgment is appropriate because this alleged conduct, if it occurred, did not result in any actual injury to Plaintiff. As Defendants correctly point out, when handcuffing is otherwise justified, a plaintiff may not prevail on an excessive force claim for too-tight handcuffs unless the plaintiff suffered more than de minimis injury. "[F]leeting discomfort from handcuffing, or red marks or swelling that disappear in a few hours or days" does not suffice. *Fisher*, 584 F.3d at 900.

---

[5] Defendants do take issue with Plaintiff's argument that it was a violation of the Fourth Amendment merely to leave Plaintiff handcuffed in the holding cell for several hours. Because the Court finds that a reasonable jury, drawing inferences in favor of Plaintiff, could conclude that PTC officers violated the Fourth Amendment by repeatedly ignoring Plaintiff's complaints, the Court will not address this alternative theory of liability.

Plaintiff certainly could have done more to document the seriousness of his injuries. Nonetheless, the Court finds that he has identified specific facts from which a jury could infer he suffered actual harm. Taken in the light most favorable to Plaintiff, the medical records indicate that Plaintiff was treated in the emergency room on June 22, 2012 for "right ulnar nerve neuropathy." He was subsequently referred to occupational therapy because he was continuing to experience pain, twitching, numbness, and stiffness in his fingers or hand.[6] While there is no indication that these injuries are "permanent, required hospitalization, or surgical intervention," Reply at 11, this is not the standard. To prevail on a handcuffing claim, a plaintiff is not required to have suffered a severe or lasting injury. All Tenth Circuit precedent requires to succeed is a showing of "an actual, non-de minimis physical, emotional, or dignitary injury," such as excruciating pain. *Fisher*, 584 F.3d at 899, *see also Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) (allowing an excessive force claim to proceed where the plaintiff suffered "pain and left bruises that lasted for several weeks").[7] To the extent that Defendant disputes Plaintiff was diagnosed with "right ulnar nerve neuropathy," there is a genuine issue of material fact that precludes summary judgment.

### b. Whether City Policy was the Moving Force behind the Alleged Violations

Next, Defendants argue that Plaintiff's claims against the City should be dismissed because Plaintiff cannot show that a City policy or custom was the moving force behind the alleged constitutional violations. As the City emphasizes, "[s]imply employing a tortfeasor is not

---

[6] The Court notes that this is not a case where there is evidence that the plaintiff sought medical treatment in order to fabricate a claim for trial. *Cf. Koch v. City of Del. City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (finding that a plaintiff's injuries were de minimis where there was evidence that the plaintiff went to the emergency room, asked for "a note saying she has radial nerve damage" for her court appearance, was referred to a neurologist, but did not seek follow-up treatment).

[7] This decision was cited by the Tenth Circuit as a case where the plaintiff alleged "some actual injury." *Cortez*, 478 F.3d at 1129.

enough to establish liability under § 1983." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996). To prevail against a municipality, a plaintiff must prove that the municipality itself is responsible for the alleged constitutional violation. *Id.* This requires a showing that a municipality made a deliberate choice, by adopting an official municipal policy or a long-standing municipal custom, which caused the plaintiff harm. *Id.* (municipal liability is limited to situations where a "deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question"). For example, a municipality may be held liable for the acts of its employees when these acts were undertaken in accordance with an unconstitutional municipal practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Id.*

Because Plaintiff's Fourth Amendment claim that he was denied access to the restroom has not been linked to any municipal policy or custom, Plaintiff may not continue to assert this claim against the City of Albuquerque under § 1983. On the other hand, after carefully reviewing the evidence provided by Plaintiff, the Court concludes that there is sufficient evidence for a reasonable fact-finder to conclude that the City of Albuquerque was the moving force behind the injuries to Plaintiff's hands. It is undisputed that it is City policy to leave detainees handcuffed in the PTC holding cells. Jaramillo Depo. at 70:15-71:8. It is also undisputed that detainees regularly complain about handcuffs being too tight. *Id.* at 79:11-14. According to the deposition of Sergeant Jaramillo, there is no common protocol for responding to these complaints. Each individual officer retains absolute discretion in deciding whether to respond to a particular complaint. *Id.* at 74:14-75:9. When asked about the protocol for whether an officer should take a complaint seriously, Sergeant Jaramillo explained that this was a "personal call;" "if an officer

wants to check them, he can check them, but [if he doesn't want to check them] he doesn't check them." *Id.* at 75:12-19. There is no oversight of an officer's decision. If an officer decides to ignore a detainee's complaints, nothing happens. *Id.* at 2-10. This had been the practice for at least six years prior to Plaintiff's arrest. *Id.* at 78:7-79:10.

Based on this evidence, it is reasonable to infer that the officers who, according to Plaintiff, ignored his complaints did so in accordance with a well-settled practice of disregarding certain detainees' complaints without ever checking their handcuffs. The officers who were on duty the night Plaintiff was detained did not act in a vacuum. Their alleged decision to ignore Plaintiff's complaints was consistent with a long-standing practice allowing individual officers to ignore complaints from detainees if they, for whatever reason, happened to disbelieve these detainees. Thus, it is fair to say that the City's policy of allowing officers to ignore complaints, without checking the cuffs, was the "moving force" behind Plaintiff's handcuff-related injuries.[8]

### 2. New Mexico Tort Claims

Plaintiff also asserts vicarious liability claims against the City of Albuquerque under the New Mexico Tort Claims Acts for the conduct of the unknown officers who interacted with Plaintiff. *See Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 121 N.M. 646, 651 (1996) ("[A]bsent a claim that the officers were acting outside the scope of their authority, the

---

[8] Defendant argues that its policies concerning the use of force are facially lawful and that the Court must, therefore, apply "rigorous standards of culpability and causation" to ensure the City is not held liable solely for the acts of its employees. Motion at 24 (quoting *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404-05 (1997)). However, besides this stray reference to culpability, Defendant does not develop the argument that it has not acted with the requisite "deliberate indifference" to be held liable under § 1983. Thus, the Court will not separately address this third requirement, *see Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1169 (10th Cir. 2002) (one-sentence argument waived because not adequately briefed), except to note that the plainly obvious consequence of Defendant's handcuffing policy is to regularly disregard what may be valid requests to loosen overly tight handcuffs. As a result, if faced with the issue, the Court would likely conclude that there is sufficient evidence to support a finding that the City acted with sufficient culpability to be held liable for Plaintiff's handcuffing injuries. *See Schneider*, 717 F.3d at 771 (10th Cir. 2013) (explaining that a city acts with the requisite state of mind to be held liable if it "has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation").

Police Department may be held vicariously liable for any alleged torts committed by the officers for which immunity has been waived."). Defendants contend that these claims must be dismissed because the conduct of these officers does not constitute assault or battery, torts for which immunity has been waived.

In New Mexico, the lawfulness of an officer's use of force depends on whether the officer was "exercising reasonable and necessary force, or unreasonable, and therefore, excessive force." *State v. Ellis*, 144 N.M. 253, 259 (2008); *see also Reynaga v. County of Bernalillo*, No. 94-2182, 1995 U.S. App. LEXIS 24230, at *4 (10th Cir. Aug. 25, 1995) ("[A] law enforcement officer is not civilly liable for using such force as may reasonably be necessary in the enforcement of law and the preservation of order.") (internal citations omitted). When a law enforcement officer acts in good faith, by making a reasonable determination about the amount of force necessary in a particular situation, "the courts will afford them the utmost protection." *Mead v. O'Connor*, 66 N.M. 170, 173 (1959). In general, the reasonableness of a particular use of force is a question for the jury. *Id.*; *St. John*, 653 F. Supp. 2d 1155 ("[A] jury must determine whether Defendants [law enforcement officials] are protected by having acted reasonably and in good faith."). For the reasons discussed above, *see* discussion *supra* Part III.B.1.ii.a, the Court concludes that Plaintiff has produced sufficient evidence to proceed to the jury on his claim that the City of Albuquerque is vicariously liable for the conduct of the unknown officers who allegedly assaulted and battered Plaintiff by locking him up and then refusing to let him use the restroom or loosen his handcuffs.

IT IS ORDERED that CITY DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT, AND MEMORANDUM IN SUPPORT (Doc. No. 24) is granted in part and denied in part as follows:

1. Plaintiff's claims against the individual Defendants – Andrew Dominguez, Gabriel Montoya, Michael McDaniel, and Cedric Galloway – will be dismissed with prejudice.

2. Plaintiff's Fourteenth Amendment excessive force claim will be dismissed with prejudice.

3. Plaintiff's claim that the City of Albuquerque violated the Fourth Amendment by denying Plaintiff access to a restroom will be dismissed with prejudice.

4. The Motion is denied as to Plaintiff's Fourth Amendment claim regarding handcuffing and Plaintiff's New Mexico state law excessive force claim as asserted against the City of Albuquerque.

_____
SENIOR UNITED STATES DISTRICT JUDGE